# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Miami Division

| | | |
|---|---|---|
| Horacio Sequeira, | ) | Case No. 1:16-cv-25052-JEM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Republic of Nicaragua, City of | ) | |
| Chinandega, Eduardo Jose Callejas | ) | |
| Callejas, and Estrellita del Carmen | ) | |
| Troz Martinez, | ) | |
| | ) | |
| Defendants. | ) | |

## OPPOSITION OF DEFENDANTS REPUBLIC OF NICARAGUA, CITY OF CHINANDEGA, AND ESTRELLITA DEL CARMEN TROZ MARTINEZ TO PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Brian M. Silverio
Silverio & Hall
150 West Flagler Street
PH 2850
Miami, Florida 33130
Tel: (305) 371-2756

Andrew Z. Schwartz
Foley Hoag LLP
Seaport World Trade Center West
155 Seaport Blvd.
Boston, MA 02210
Tel:  (617) 832-1000

Attorneys for Defendants Republic of Nicaragua, City of Chinandega,
and Estrellita del Carmen Troz Martinez

February 16, 2018

## I.       INTRODUCTION

Defendants Republic of Nicaragua ("Nicaragua"), City of Chinandega ("Chinandega") (Nicaragua and Chinandega together, the "Sovereign Defendants"), and Estrellita del Carmen Troz Martinez ("Troz") (the Sovereign Defendants and Troz together, the "Nicaraguan Defendants") submit this opposition to the motion of Plaintiff Horacio Sequeira for leave to file the amended complaint attached to his motion.  Docket Entry ("D.E.") 70, 70-2.  The Court should deny the motion because the proposed amendment fails to cure the deficiencies that led to the dismissal of Plaintiff's original complaint and otherwise is futile.

## II.      PROCEDURAL HISTORY

Plaintiff commenced this action *pro se* on December 6, 2016.  D.E. 1.  As Magistrate Judge Goodman observed, Plaintiff's "complaint and other filings contain inconsistent facts, incomplete thoughts, and, frankly, a morass of confusing statements that make it difficult . . . to navigate through the true course of events in this case."  D.E. 45 at 2 n.2.

This "morass" consisted of four types of allegations:  First, Plaintiff alleged that the Nicaraguan Defendants and co-Defendant Eduardo Jose Callejas Callejas "committed illegal takings" of Plaintiff's real property allegedly "consisting of one thousand acres of Land" called "El Pital" "located in the municipality of El Viejo of department of Chinandega, Nicaragua," D.E. 1 ¶¶ 10, 28, 41, and personal property allegedly consisting of "five hundred farm animals." D.E. 1 ¶¶ 28, 41.  Second, Plaintiff asserted breach of implied covenant of good faith and fair dealing claims, alleging that "Defendants . . . had a duty to act fairly and in good faith . . . in meeting their responsibilities under the contracts they signed with" him.  D.E. 1 ¶¶ 123–25.  The complaint's only allegations about contracts, however, concerned Plaintiff's alleged contracts with Callejas (and Callejas's wife).  D.E. 1 ¶¶ 117–21.  Third, Plaintiff asserted tort claims of torture; cruel, inhumane and degrading treatment; assault and battery; trespass to land and

1

chattels; intentional and negligent interference with prospective economic advantage and business relationship; and intentional infliction of emotional distress.  *See* D.E. 1 ¶¶ 74–77, 79–82, 84–90, 92–97, 99–103, 105–13, 115–16, 129–34.  Fourth, Plaintiff sought to overcome the Sovereign Defendants' and Troz's anticipated jurisdictional defenses with an assortment of allegations of conduct related to the United States.  *See, e.g.*, D.E. 1 ¶¶ 7, 15, 17, 19, 44, 59.

The original complaint alleged that Nicaragua is a sovereign State and that Chinandega is a political subdivision thereof, as does the proposed amended complaint.  D.E. 1 ¶¶ 3, 23, 24; D.E. 70-2 ¶¶ 33, 36.  There is no dispute that each is a "foreign state" under §1603(a) of the Foreign Sovereign Immunities Act, 28 U.S.C. §§1602 *et seq.* ("FSIA"), and presumptively immune from the Court's jurisdiction under FSIA §1604.  The original complaint alleged four exceptions to foreign sovereign immunity:  (1) the "waiver" exception in §1605(a)(1); (2) the "commercial activity" exception in §1605(a)(2); (3) the "expropriation" exception in §1605(a)(3); and (4) the "tort" exception in §1605(a)(5).  D.E. 1 ¶¶ 2, 13.[1]

The Nicaraguan Defendants filed motions to dismiss the original complaint.  D.E. 25, 26. The Sovereign Defendants moved for dismissal based on Plaintiff's failure to comply with FRCP 8(a); lack of subject matter jurisdiction under the FSIA; lack of personal jurisdiction under 28 U.S.C. §1330; failure to serve process as required by FSIA §1608(a); failure to state a claim upon which relief can be granted; and improper venue under 28 U.S.C. §1391(f).  D.E. 25.  In addition to these Rule 8(a) and 12(b)(6) grounds, Troz moved for dismissal for lack of personal jurisdiction; failure to serve process as required by FRCP 4(f); and assuming the Court dismissed Plaintiff's claims against the Sovereign Defendants, lack of subject matter jurisdiction over

---

[1] As discussed below, Plaintiff only asserts the waiver and commercial activity exceptions in his proposed amended complaint.

Plaintiff's claims against Troz, as there would be no remaining basis for federal question jurisdiction and no diversity.  D.E. 26.[2]

Seeking to fend off dismissal, Plaintiff submitted purported evidence with his briefs.  In opposing Callejas's motion, Plaintiff submitted a declaration with 79 pages of exhibits, and an "errata" with purported translations of some of those exhibits.  D.E. 17, 20, 21.  Plaintiff's exhibits showed that he has had a dispute concerning El Pital with Callejas, and the dispute has been the subject of Nicaraguan court proceedings continuing through 2015.  *See, e.g.*, D.E. 1 ¶¶ 118–19; D.E. 17 at 14–94; D.E. 20 at 33–113; D.E. 21 at 4–22.  The only "contract" that Plaintiff submitted is what appears to be an alleged July 18, 2004 rental agreement between Plaintiff and Callejas, both of whom expressly "appear[ed] on their own behalf and representing themselves," and it appears that Callejas made payments to Plaintiff for "Pital."  *See* D.E. 1 ¶ 118; D.E. 20 at 35, 38; D.E. 21 at 6; D.E. 25 Exh. 1 (2004 Rental Agreement).[3]

In opposing the Nicaraguan Defendants' motions, Plaintiff submitted briefs and declarations different than those he submitted regarding Callejas's motion.  These presented a whole new tale about the alleged events upon which his claims are based.  D.E. 29, 30, 31, 32. But they confirmed that those events fundamentally concern a Nicaraguan land dispute, and that the alleged acts upon which Plaintiff's claims are based all took place in Nicaragua.  *See, e.g.*, D.E. 30 ¶¶ 17–30 (Plaintiff asserting that contracts regarding El Pital were concluded between himself and Callejas (and Callejas's wife), Callejas paid him under the contracts, Callejas breached the contracts in 2008, and Plaintiff made demands against Callejas).

---

[2] Callejas also moved to dismiss the complaint under Rule 12(b)(6).  D.E. 16.

[3] Plaintiff submitted translations of the Rental Agreement, which contained errors and were in some passages incomprehensible.  The Sovereign Defendants submitted a correct certified translation.  D.E. 25-1.

The Magistrate Judge issued his Omnibus Report and Recommendations on the motions to dismiss ("Magistrate Judge's Report," D.E. 45).  He recommended that the Court dismiss the complaint for lack of subject matter jurisdiction over Plaintiff's claims against the Sovereign Defendants under the FSIA, and lack of subject matter jurisdiction over the claims against the individual Defendants for lack of diversity.  D.E. 45 at 2–3.  The Magistrate Judge did not find it necessary to reach Defendants' other grounds for dismissal.  Specifically, Magistrate Judge Goodman found:

(1)    The waiver exception in FSIA §1605(a)(1) did not apply because (a) Plaintiff did not allege that either of the Sovereign Defendants had explicitly waived their sovereign immunity; (b) the only contract to which Plaintiff alleged he was a party was between Plaintiff and Callejas; (c) Plaintiff did not show that Callejas is a Nicaraguan government official, and thus all of the claims against Callejas were asserted against a private individual; and (d) even if there were a contract to which Nicaragua or Chinandega was a party, entering into a contract alone does not constitute an implied waiver of sovereign immunity.  D.E. 45 at 12–14.

(2)    None of the three prongs of the commercial activity exception in FSIA §1605(a)(2) applied because (a) the core of Plaintiff's claims against Nicaragua and Chinandega was their alleged expropriation of his property, which is a uniquely governmental and not a commercial activity; (b) with the exception of execution of the alleged contract between Plaintiff and Callejas, all of the alleged activity on which the complaint was based occurred in Nicaragua, not the United States; (c) alleged sales of meat products and collection of funds in the United States and the alleged use of those funds were not the foundation of the complaint, and thus were jurisdictionally irrelevant; and (d) alleged financial loss in the United States does not constitute a "direct effect" in this country.  D.E. 45 at 14–18.

(3)    The expropriation exception in FSIA §1605(a)(3) did not apply because Plaintiff's alleged property was not taken by either of the Sovereign Defendants, as Plaintiff's sworn testimony was that Troz and Callejas orchestrated and carried out the taking of El Pital for their own personal gain.  D.E. 45 at 18–26.

(4)    The tort exception in FSIA §1605(a)(5) did not apply because all of the alleged torts occurred in Nicaragua.  D.E. 45 at 26.

(5)    Once the case is dismissed as to the Sovereign Defendants, it must be dismissed as to Troz and Callejas for lack of complete diversity.  D.E. 45 at 27–28.

4

Plaintiff objected to the Magistrate's Report, primarily relying on assertions that did not appear anywhere in the original complaint and that he did not raise in opposing the motions to dismiss.  He also raised several objections relating to matters that had been before the Magistrate Judge, confined to the expropriation and commercial activity exceptions. Specifically, he contended that:

> (1)    The Magistrate Judge should have found that §1605(a)(3) was applicable, because Troz and Callejas allegedly acted in their "official capacity" when they committed an "illegal taking" of El Pital by fraudulently registering title in Callejas's name and, therefore, the Sovereign Defendants were the real parties in interest.  D.E. 51 at 4–6.

> (2)    The Magistrate Judge should have found that the second prong of §1605(a)(2) was satisfied, because the alleged selling of Plaintiff's cattle as meat products in the United States constituted an act performed in the United States in connection with commercial activity elsewhere.  D.E. 51 at 5.

Plaintiff raised no objection to the Magistrate Judge's Report insofar as it found that the waiver exception was inapplicable.  As to the Magistrate Judge's finding that the tort exception was inapplicable, Plaintiff did not contest that all of the torts alleged in his complaint occurred in Nicaragua.  His only objection was based upon a new theory that he had never previously raised, *i.e.*, that the sale of meat in the U.S. constituted a tort.

This Court adopted the Magistrate Judge's Report in its entirety, granted the Nicaraguan Defendants' and Callejas's motions to dismiss for lack of subject matter jurisdiction, and ordered the case closed.  D.E. 57.  The Court's adjudication was based upon its own "careful consideration" of the Magistrate Judge's Report, "the entire file and record," and its "*de novo* review of the issues that the objections to the Magistrate Judge's Report and Recommendation present."  D.E. 57 at 1.

Plaintiff then moved for clarification of whether this Court had dismissed his complaint with or without prejudice.  D.E. 58 at 1–2.  Plaintiff also asked that the Court allow him an

5

opportunity to amend his complaint to attempt to cure the deficiencies identified by the Magistrate Judge.  D.E. 58 at 2.

This Court issued an order allowing Plaintiff until February 2, 2018 to file a motion for leave to amend.  D.E. 69.  Plaintiff filed such a motion, attaching a proposed 44-page amended complaint.  D.E. 70, 70-2.  He did not, however, explain how his amended pleading attempts to overcome any of the deficiencies identified in the Magistrate Judge's Report.

## III.   ARGUMENT

The Eleventh Circuit has made clear that "leave to amend [a complaint] may be denied properly when the proposed amendment would be futile."  *Gibson v. Doe*, 629 Fed. App'x 868, 871 (11th Cir. 2015) (citing *Hall v. United Ins. Co.*, 367 F.3d 1255, 1262 (11th Cir. 2004)); *cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) ("futility of amendment" is a reason to deny leave to amend).  Amendment is futile if "the complaint as amended would still be properly dismissed." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007); *see Christman v. Walsh*, 416 Fed. App'x 841, 844 (11th Cir. 2011).  While "the court 'should freely give leave [to amend] when justice so requires' . . . justice does not require district courts to waste their time on hopeless cases."  *Mizzaro v. Home Depot*, 544 F.3d 1230, 1255 (11th Cir. 2008).  Therefore, "leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint." *Id.*

Screening the proposed amended complaint is particularly important here, because permitting Plaintiff to extend the litigation based upon an untenable pleading would run afoul of the principles underlying the FSIA.  *See EM Ltd. v. Banco Central De La Republica Argentina*, 800 F.3d 78, 88 (2d Cir. 2015) (unless the court can conclusively determine that pleadings establish an exception to sovereign immunity, as a matter of law, "it would be inconsistent with the underlying purpose of the foreign-sovereign-immunity doctrine to subject [a defendant with

immunity under the FSIA] to further burdensome litigation"); *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 849 (5th Cir. 2000) ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation"); *In re Papandreou,* 139 F.3d 247, 251 (D.C. Cir. 1998) (same).

### A.  The Proposed Amended Complaint Is Futile As To Troz

1.    <u>Plaintiff has abandoned all claims against Troz.</u>

In attempting to circumvent the Magistrate Judge's Report, Plaintiff now proclaims that he is not seeking any relief against Troz personally.  Yet he continues to include her as a defendant in his proposed amended pleading.  It is hard to imagine more of an exercise in futility.

In the original complaint, Plaintiff asserted claims, and sought relief, against all Defendants.  *See* D.E. 1, Counts I-X, XII-XIV & Prayer for Relief.  Now, however, he reverses course and says that "[t]his suit is not against [Troz] personally" and that "Mr. Sequeira does not seek damages from Ms. Troz's own personal pocket."  D.E. 70-2 ¶¶ 5–6.  Instead, Plaintiff's proposed amended complaint asserts that he is suing Troz "in her official capacity . . . for her participation for the benefit of Nicaragua," *id*. ¶ 5; that "he is seeking redress from Nicaragua and Chinandega," but not Troz, *id*. ¶ 6; that "Nicaragua and Chinandega are the real parties in interest in this lawsuit," *id*. ¶ 7; and that Troz "is not the real party in interest."  *Id*.  Moreover, in contrast to the original complaint, which asserted 13 counts against Troz, the proposed amended complaint does not assert *any* counts against Troz.  *See* D.E. 70-2 ¶¶ 78–186.

Consequently, the allegations in the proposed amended complaint are self-defeating as to Troz.  While Plaintiff would like to include Troz as a defendant, he has now disavowed asserting any claims or seeking any relief against her personally and taken the position that she is a not a real party in interest.  That is fatal to any attempt by Plaintiff to make Troz a defendant in his

amended pleading.  *See Williams v. E.I. DuPont de Nemours Co.*, 581 F. Supp. 791, 793 (M.D. Tenn. 1983) ("If no relief is requested against [a defendant], he should be dismissed." (citing *Benton v. Rhodes*, 586 F.2d 1, 4 (6th Cir. 1978)) (alteration in original)); *see also Harris v. Fairweather*, No. 11 Civ. 2152, 2012 U.S. Dist. LEXIS 151696, at *18 (S.D.N.Y. Oct. 19, 2012) (dismissing defendants because no relief was sought against them); *Nelson v. Dean*, 528 F. Supp. 2d 1271, 1282–83 (N.D. Fla. 2007); *Dr. Reddy's Labs., Inc. v. Thompson*, 302 F. Supp. 2d 340, 343 (D.N.J. 2003); *Zurich Ins. Co. v. Health Sys. Integration, Inc.*, No. 97-4994, 1998 U.S. Dist. LEXIS 3362, at *5–6 (E.D. Pa. Mar. 19, 1998); *In re MiScott Corp.*, 49 B.R. 893, 895 n.1 (Bankr. S.D. Fla. 1985).

> 2.    Troz has not been properly served and is not within this Court's jurisdiction.

The motion to amend should also be denied as to Troz because she has not been properly served with process and this Court otherwise cannot exercise personal jurisdiction over her, for reasons she explained in moving to dismiss the original complaint.  D.E. 26 at 2–9.  While Magistrate Judge Goodman did not reach these issues in his Report, they remain obstacles that Plaintiff has not, and as to personal jurisdiction cannot, overcome, rendering the proposed amendment futile as to Troz.

> 3.    The claims against Troz are barred by official immunity.

Even if Plaintiff were proposing to assert claims against Troz personally and recover damages from her, which he is not, and could establish personal jurisdiction over her, which he cannot, his proposed amendment would still be futile as to Troz.   "[A] foreign official may assert immunity for official acts performed within the scope of his duty."  *Yousuf v. Samantar*, 699 F.3d 763, 775 (4th Cir. 2012).  This official-act immunity has long been recognized at common law, and is not abrogated by the FSIA.  *See id.* at 768 ("the common law, not the FSIA,

continues to govern foreign official immunity") (citing *Samantar v. Yousuf*, 560 U.S. 305, 320 (2010)); *see also Carpenter v. Republic of Chile*, 610 F.3d 776, 780 (2d Cir. 2010) (foreign officials enjoy common-law immunity separate from the immunity granted to states under the FSIA).

The criteria for official immunity are straightforward. When a claim is: (a) brought against a foreign official, and (b) based on actions taken in an official capacity, immunity attaches, and the claim must be dismissed.  *See Newman v. Jewish Agency for Israel*, No. 16-cv-7593, 2017 U.S. Dist. LEXIS 202524, at *7–9 (S.D.N.Y. Dec. 8, 2017); *El Omari v. Ras Al Khaimah Free Trade Zone Auth.*, No. 16 Civ. 3895, 2017 U.S. Dist. LEXIS 136172, at *29–32 (S.D.N.Y. Aug. 17, 2017); *Mireskandari v. Mayne*, No. CV 12-3861, 2016 U.S. Dist. LEXIS 38944, at *46–61 (C.D. Cal. Mar. 23, 2016); *Richardson v. Att'y Gen.*, Civil No. 2008-144, 2013 U.S. Dist. LEXIS 117763, at *38–48  (D.V.I. Aug. 20, 2013).

Plaintiff's proposed amended complaint alleges that Troz is a government official who acted under the direction and control of Nicaragua and Chinandega.  D.E. 70-2 ¶¶ 5–7.  It also avers that Plaintiff's claims relate only to actions taken in Troz's official capacity.  *Id.* ¶¶ 5, 71; *see also id.* ¶¶ 53, 82, 93, 96.  Therefore, his proposed amendment is barred as to Troz by common law immunity.

4.     Nicaragua's sovereign immunity encompasses Troz because it is the real party in interest.

Even if Troz did not enjoy common law official immunity, the proposed amended complaint against her would be barred because she shares in Nicaragua's sovereign immunity. Although the FSIA does not directly govern the immunity of foreign officials, the Supreme Court has held that "some actions against an official in his official capacity should be treated as actions against the foreign state itself, as the state is the real party in interest."  *Samantar*, 560

U.S. at 325.  In such situations, the sovereign immunity enjoyed by the foreign state—the real party in interest—extends to the individual defendant.

For example, in *Gomes v. ANGOP*, the district court dismissed claims against individual Angolan officials upon holding that "the real parties in interest in this case are Angola and its political institutions, all of which are immune from the jurisdiction of this Court [under the FSIA]."  No. 11-CV-0580, 2012 U.S. Dist. LEXIS 119049, at *54–55 (E.D.N.Y. Aug. 22, 2012). In *Odhimabo v. Republic of Kenya*, the district court held that because "the Kenyan government is 'the real party in interest' . . .  the suit against the individual defendants will be treated as one against the Republic of Kenya."  930 F. Supp. 2d 17, 35 (D.D.C. 2013)*; see also Smith Rocke Ltd. v. República Bolivariana de Venez.*, No. 12 Cv. 7316, 2014 U.S. Dist. LEXIS 9692, at *32 (S.D.N.Y. Jan. 27, 2014) (dismissing claims against individual government officials who "were sued in their official capacity" where "the real party in interest is Venezuela," which was immune from suit under the FSIA.); *Mohammadi. v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 72 (D.D.C. 2013) (holding that Iran's sovereign immunity required dismissal of claims against individual government officials because Iran was the real party in interest).

There are two hallmarks of a case in which a foreign state, rather than an individual, is the real party in interest.  The first is that an individual has been sued in her official capacity. *See, e.g.*, *Smith Rocke Ltd.*, 2014 U.S. Dist. LEXIS 9692, at *32; *Mohammadi*, 947 F. Supp. 2d at 72; *Gomes*, 2012 U.S. Dist. LEXIS 119049, at *54–55.  The second is that the plaintiff does not seek damages from the individual defendant personally, but instead from the foreign state. *See Smith Rocke Ltd.*, 2014 U.S. Dist. LEXIS 9692, at *32; *Odhiambo*, 930 F. Supp. 2d at 34– 35; *see also Nnaka v. Fed. Republic of Nig.*, 238 F. Supp. 3d 17, 31 (D.D.C. 2017) ("[E]ven if Nnaka was to obtain his desired judgment . . . against [an individual defendant] in his official

capacity, Nnaka would need to look to Nigeria in order to recover.  That makes Nigeria the 'real party in interest.'").

Both hallmarks are present here.  The proposed amended complaint makes abundantly clear that Plaintiff seeks to sue Troz in solely her official capacity.  *See* D.E. 70-2 ¶¶ 5, 71; *see also id.* ¶¶ 53, 82, 93, 96.  It also repeatedly states that Plaintiff "does not seek damages from Ms. Troz's own personal pocket."  D.E. 70-2 ¶¶ 6, 71.  Indeed, Plaintiff admits that "Nicaragua and Chinandega are the real parties in interest in this lawsuit" and that Troz "is not the real party in interest."  D.E. 70-2 ¶¶ 7, 71.

As demonstrated below, each of the claims against Nicaragua and Chinandega asserted in the proposed amended complaint is barred by foreign sovereign immunity.  Therefore, any claims against Troz would also be barred by sovereign immunity, and would not survive a motion to dismiss.[4]

### B.  The Proposed Amended Complaint is Futile as to Nicaragua and Chinandega

While Plaintiff invoked four FSIA exceptions in seeking to establish subject matter jurisdiction over his claims against the Sovereign Defendants in his original complaint, D.E. 1 ¶¶ 2, 13, he now invokes only two of these exceptions in his proposed amended complaint:  the waiver exception in FSIA §1605(a)(1), and the commercial activity exception in §1605(a)(2).  See D.E. 70-2 ¶¶ 42–69.  Both are unavailing.

---

[4] In his Omnibus Report and Recommendations, Magistrate Judge Goodman correctly held that an individual official could enjoy the same immunity as a foreign state under the FSIA when the foreign state is the real party in interest.  D.E. 45 at 10.  However, he declined to hold that Nicaragua and Chinandega were the real parties in interest in the context of the original complaint, given that Plaintiff alleged therein that Troz acted for her personal benefit and he sought damages from Troz in her personal capacity.  *See* D.E. 45 at 10–11.  Plaintiff has abandoned any pretense of suing Troz in her individual capacity and now avers that Troz's alleged actions were for the benefit of Nicaragua and Chinandega, not herself.  *See* D.E. 70-2 ¶¶ 5–7, 53, 71.

      1.      <u>The proposed amended complaint's reliance on the waiver exception is futile.</u>

Plaintiff seeks to predicate subject matter jurisdiction on the waiver exception, FSIA §1605(a)(1).  D.E. 70-2 ¶¶ 44–45.  He is precluded from doing so, however, as he failed to object to the Magistrate Judge's determination that the waiver exception is inapplicable.  *See* D.E. 51.  Plaintiff improperly seeks a *de novo* determination of that issue in the guise of a motion to amend.  *W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, No. 08-80897, 2010 U.S. Dist. LEXIS 148540, at \*13–14 (S.D. Fla. Jan. 14, 2010) (failure to timely object to issue addressed in report and recommendation precludes *de novo* determination of that issue by the district court); *see also* D.E. 45 at 28 (warning that "[f]ailure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report").

Even if Plaintiff had not waived the waiver exception, his proposed amended complaint would still be futile as to that exception.  In determining that the original complaint did not satisfy §1605(a)(1), the Magistrate Judge observed that, in attempting to establish an implicit waiver of sovereign immunity, Plaintiff relied on an alleged contract between Nicaragua and *Callejas*, not one between Nicaragua and *Plaintiff*.  D.E. 45 at 12–14.  Thus, Plaintiff could not invoke the waiver exception against Nicaragua based on that alleged contract.

The Magistrate Judge also correctly explained that, for a contract with a foreign sovereign to implicitly waive sovereign immunity, the contract must "contain an applicable arbitration provision or choice of law provision that proves that the contracting parties agreed to have lawsuits or arbitrations in the U.S. or that U.S. law would govern all disputes arising from the contract."  *Id.* at 14.  Having said nothing about this before, Plaintiff now alleges that in 1998 he entered into a contract with a Nicaraguan "organ" known as Instituto de Desarrollo Rural ("IDR"), later modified in 2005, under which the parties supposedly "agree[d] to an international

arbitration in the U.S.A." D.E. 70-2 ¶ 45. He does not attach any such ancient contract to his proposed amended complaint.

Even if it were true that there was such a contract, that would not be sufficient to constitute an implied waiver of Nicaragua's or Chinandega's sovereign immunity. First, Plaintiff does not explain how a contract signed by IDR could make Nicaragua a party to it. Second, Plaintiff does not allege that this purported contract remains in force twenty years after it allegedly went into effect. Third, Plaintiff does not explain why, if he agreed to "international arbitration," and the arbitration provision is operative, he has instead commenced this lawsuit.

For all these reasons, this latest shift in Plaintiff's story is another exercise in futility. It is both too late and too little. The Court should not permit Plaintiff to amend his pleading to try to manufacture jurisdiction under the FSIA's waiver exception. Any such effort has been waived and would otherwise be doomed to fail.

> 2.      The proposed amended complaint's reliance on the commercial activity exception is futile.

Plaintiff also seeks to predicate subject matter jurisdiction on the commercial activity exception, FSIA §1605(a)(2). D.E. 70-2 ¶¶ 46–69. The Magistrate Judge found that the third prong of §1605(a)(2) was inapplicable because Plaintiff impermissibly relied upon his own (rather than the Sovereign Defendants') commercial activity and, in any event, his allegations of financial loss were insufficient to constitute a "direct effect in the United States" as required by that prong. D.E. 45 at 17–18. Plaintiff did not object to that finding. *See* D.E. 51. While Plaintiff now makes a raft of new allegations about financial loss in the United States, D.E. 70-2 ¶¶ 61–69, he has waived any argument as to the applicability of §1605(a)(2)'s third prong.

Even if Plaintiff had not waived reliance on §1605(a)(2)'s third prong, his new allegations would be futile regardless. The allegations that his Nicaraguan company was

required to pay dividends to him in the United States have no jurisdictional significance.  And he alleges no harm to that company, which is not a named plaintiff in any event.  D.E. 70-2 ¶¶ 61–64.  The allegations about the purported contract between Plaintiff and IDR fail under the commercial activity exception because Plaintiff has not explained how Nicaragua could be bound by the contract.  Nor does Plaintiff allege that the IDR contract was executed in the United States or explain how it could possibly constitute "property rights, which are currently present in the U.S.A."  D.E. 70-2 ¶¶ 65–67.  His final confused "direct effect" allegations concern Callejas's alleged payment from Florida of rent to Chinandega and the alleged use of that rent to pay lawyers to represent the Nicaraguan Defendants in this lawsuit.  Those allegations do not constitute either an "act outside the territory of the United States" or any "direct effect" that impacts Plaintiff in the United States.  28 U.S.C. §1605(a)(2); D.E. 70-2 ¶¶ 68-69.

Plaintiff's other attempts to resurrect the commercial activity exception also fail, for essentially the same reasons his earlier attempts failed.  According to Plaintiff, in analyzing the commercial activity exception, the Magistrate Judge should have considered the alleged sale of meat and collection of funds in the United States and, if he had, he would have found that alleged conduct sufficient.  D.E. 51 at 5.  In determining whether Plaintiff's claims satisfied §1605(a)(2), however, the Magistrate Judge's Report *did* analyze Plaintiff's allegations that the Sovereign Defendants sold meat products in the United States from cattle on El Pital, and his allegations that they collected funds from those sales here.  D.E. 45 at 16–17.  Correctly applying Supreme Court and Eleventh Circuit precedent, the Magistrate Judge found that "[t]he core of Plaintiff's complaint against Nicaragua and Chinandega is based upon the 'illegal taking' of his personal and real property and Defendants' failure to compensate him," not the alleged ensuing sale of meat products and collection of funds from those sales in the United States.  D.E. 45 at 14–17

14

(citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 356–58 (1993); *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 395 (2015); *Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323, 1325 (11th Cir. 2003)).

The Magistrate Judge undertook the proper analysis required to determine whether §1605(a)(2) applies to Plaintiff's claims.  *Nelson*, 507 U.S. at 357 (the term "based upon" in §1605(a)(2) "mean[s] those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case"); *OBB Personenverkehr*, 136 S. Ct. at 396 ("[A]n action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit.  Rather than individually analyzing each of [a complaint's] causes of action [the court is to] zero[] in on the core of . . . [the] suit.").

The gravamen of the proposed amended complaint—despite its efforts to attribute commercial "motives" to Nicaragua and Chinandega, D.E. 70-2 ¶¶ 25, 83—is the alleged taking of Plaintiff's property in Nicaragua and the alleged torts related thereto.  *See* D.E. 70-2 ¶¶ 78–99, 133–86.  In his opposition to the Sovereign Defendants' motion to dismiss his original complaint, Plaintiff did not contest that such alleged conduct is inherently "governmental" in nature and, therefore, not within the commercial activity exception.  *See* D.E. 25 at 12–14; D.E. 37 at 5.  That alleged governmental conduct in Nicaragua could not support jurisdiction under the commercial activity exception before, and it cannot support it now.  *Beg*, 353 F.3d at 1325.

The proposed amended complaint's other attempts to establish jurisdiction under the commercial activity exception are also futile.  None of those allegations provides any information about when any alleged meat sales, alleged collection of funds, alleged investments, alleged payments to "front men" and lawyers' trust accounts, and "money laundry [*sic*]" occurred, and who other than Callejas was allegedly involved in such activities.  *See, e.g.*, D.E.

15

70-2 ¶¶ 26, 49, 50.  As to Callejas's alleged involvement, the proposed amendment continues to

fail to make any allegation about how Callejas might be a Nicaraguan government official or

otherwise authorized to act on either of the Sovereign Defendants' behalf.  *See* D.E. 45 at 11.

For all these reasons, the proposed amended complaint does not plausibly plead the

applicability of the commercial activity exception in §1605(a)(2).

> 3.  The proposed amended complaint fails to satisfy any other FSIA
> exception.

While Plaintiff has jettisoned the FSIA expropriation and tort exceptions from his

jurisdictional allegations, *see* D.E. 70-2 ¶¶ 42–69, his proposed amended complaint retains

expropriation and tort claims against the Sovereign Defendants.  *Id.* ¶¶ 78–99, 133–42, 149–86.

Beyond the absence of any jurisdictional allegations to support these claims, which is itself

dispositive, there is no basis for asserting jurisdiction over these claims under FSIA §1605(a)(3)

or (5), should Plaintiff seek to revive either or both those exceptions.

The allegations of the proposed amended complaint offer no plausible explanation of how

Plaintiff's property was "taken in violation of international law" as required by §1605(a)(3).

Plaintiff is silent about how Nicaragua supposedly "took possession of" El Pital "in January

2008," and at some unspecified point "transferred it to Chinandega's dominion and control for

management." D.E. 70-2 ¶ 82.  His only specific allegation as to how the Sovereign Defendants

might have taken his property are that Nicaragua used Troz and Calljas to "forg[e] a series of

legal documents and to use devices, such as a sham title to disguise the illegal taking" and

"directed . . . Troz to ignore" a Nicaraguan court writ intended "to protect" him "from any illegal

taking."  D.E. 70-2 ¶¶ 82, 93.  Plaintiff does not identify what "legal documents" allegedly were

forged, but presumably he means the same documents he earlier alleged Troz and Callejas used

to record a forged title to El Pital in *Callejas's* name.  D.E. 1 ¶¶ 8, 29–30, 41, 47–53, 60, 66–67;

16

D.E. 30 ¶¶ 38–46.  But that story make no sense.  Why would Nicaragua, which—like all sovereigns—has the power of eminent domain, need to "disguise" a taking of property within its jurisdiction?  And how could transferring title to El Pital to *Callejas*, a U.S. citizen, constitute an expropriation of property by *Nicaragua and Chinandega*?  These allegations are nonsensical.

The proposed amended complaint is also futile with respect to the expropriation exception's jurisdictional nexus requirements.  As to the first nexus clause, the allegedly expropriated property consists of El Pital and the cattle on it, and that property is indisputably in Nicaragua, not the United States.  The same is true for any alleged rental payments that Callejas sent to Chinandega in Nicaragua.  D.E. 70-2 ¶ 22.  Further, the proposed amendment provides no information about how alleged "profits and revenues" from meat sales in the United States could meet the statutory requirement that such property be "*currently present* in the United States." *Alperin v. Vatican Bank*, 365 Fed. Appx. 74, 75 (9th Cir. 2010) (emphasis added).  Indeed, it is difficult to imagine how any meat products from any El Pital cattle that existed in January 2008 or any revenues from those alleged meat products could possibly be present in the United States now, ten years later.

As to the second nexus clause, the proposed amended complaint does not allege that any agency or instrumentality of Nicaragua "own[s] or operate[s]" the allegedly expropriated property, or that any such agency or instrumentality is engaged in a commercial activity in the United States."   Under FSIA §1603(b), neither Nicaragua nor Chinandega is an "agency or instrumentality."   The second nexus clause is thus categorically inapplicable.

 The proposed amendment also provides no basis for jurisdiction under the tort exception, FSIA §1605(a)(5).  For that exception to apply, both the tortious act and the injury must occur in the United States.  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 441

(1989); *Basulto v. Republic of Cuba*, No. 02-21500, 2005 U.S. Dist. LEXIS 48556, at *13 (S.D. Fla. Jan. 19, 2006). All of the proposed amendment's tort claims—conversion, trespass to land and chattels, intentional and negligent interference with prospective economic advantage, and intentional and negligent infliction of emotional distress, D.E. 70-2 ¶¶ 133–42, 149–86—are based on allegedly tortious acts in Nicaragua, *e.g.*, illegally taking and operating El Pital, illegally turning Plaintiff's cattle into meat products and interfering with his alleged business of selling meat, and interfering with Plaintiff's alleged Nicaraguan law practice. Plaintiff's contrived efforts to tie to the United States some of the alleged torts involving meat sales, *see, e.g.*, D.E. 70-2 ¶¶ 161, 171, do not help him meet §1605(a)(5)'s requirements, as those alleged torts are all founded on conduct in Nicaragua. In sum, the Magistrate Judge's finding that the torts alleged by Plaintiff in the original complaint occurred in Nicaragua applies with equal force to the torts alleged in the proposed amended complaint. D.E. 45 at 26. There is no subject matter jurisdiction over these claims under the FSIA.

### C. The Proposed Amended Complaint Is Futile For Other Reasons The Nicaraguan Defendants Previously Have Raised

The Nicaraguan Defendants moved to dismiss the original complaint on multiple grounds, only some of which the Magistrate Judge needed to reach to recommend dismissal of the action. In addition to being futile for the reasons stated above, the proposed amended complaint has no chance of overcoming the Nicaraguan Defendants' prior arguments for dismissal, including without limitation for failure to serve process on the Sovereign Defendants in accordance with the FSIA, improper venue, failure to state a claim upon which relief can be granted, and lack of diversity jurisdiction as to the individual defendants. *See* D.E. 25 at 17–20; D.E. 26 at 2–20; D.E. 36 at 2–6; D.E. 37 at 2, 10–11.

The Nicaraguan Defendants will focus here only on the venue issue, which is plainly dispositive.  Venue of an action against a foreign sovereign is governed exclusively by 28 U.S.C. §1391(f).  Plaintiff invokes subsection (f)(1).  D.E. 70-2 ¶ 76.  That provision states than an action against a foreign state may be brought "in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

Plaintiff alleges as to venue that "[t]he locus of Plaintiff's breach of contract occurred at Plaintiff's principal place of residence and domicile in Miami Dade Florida" and that "Mr. Callejas, currently does business in state of Florida and . . . at one point all business of Mr. Callejas are incorporated in the State of Florida."  *Id.* ¶ 76–77.  He conspicuously does not allege that the criteria of §1391(f)(1) are met, and they are not.  As Magistrate Judge Goodman found when recommending dismissal of the original complaint, the "core" of Plaintiff's complaint is the "'illegal taking' of his . . . property and Defendants' failure to compensate him," and those events all "occurred in Nicaragua, not the United States."  D.E. 45 at 15–16.  Meat sales and the collection of funds in the United States—as well as the new U.S. activities that Plaintiff has cooked up—are "not the foundation of Plaintiff's complaint."  D.E. 45 at 16; *see also id.* at 17.  Plaintiff's allegations about Callejas's residence and activities in Florida do not help him show that §1391(f)(1) applies.  They do not constitute the core of his claims, and he continues to fail to allege any basis for deeming Callejas a government official or otherwise authorized by Nicaragua or Chinandega to act on their behalf.  *See* D.E. 45 at 11.

Thus, assuming there were subject matter and personal jurisdiction, which there is not, the only district in which there would be venue over this action is the District of Columbia under 28 U.S.C. §1391(f)(4).

19

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to file an amended complaint should be denied as futile and the case should be dismissed with finality.


Date:  February 16, 2018                          Respectfully submitted,


                                                   /s/ Andrew Z. Schwartz
                                                  Andrew Z. Schwartz (*admitted pro hac vice*)
                                                  Foley Hoag LLP
                                                  Seaport World Trade Center West
                                                  155 Seaport Blvd.
                                                  Boston, MA 02210
                                                  Tel: (617) 832-1000
                                                  Fax: (617) 832-7000
                                                  E-mail:  aschwartz@foleyhoag.com

                                                  Brian M. Silverio
                                                  Florida Bar No. 0183301
                                                  Silverio & Hall
                                                  150 West Flagler Street
                                                  PH 2850
                                                  Miami, Florida 33130
                                                  Tel: (305) 371-2756
                                                  Fax: (305) 372-2744
                                                  E-mail:  bsilverio@silveriohall.com

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that, on this 16th day of February 2018, we electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being served this day on Plaintiff and all counsel of record, in the manner specified in the Service List below, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner to those parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Brian M. Silverio*
Brian M. Silverio

## SERVICE LIST

Via Notice of Electronic Filing - CM/ECF:
Gabriel J. Fernandez
Anthony J. Tinelli
Mase Tinelli, P.A.
2601 S. Bayshore Drive, Suite 800
Miami, Florida 33133
gfernandez@masetinelli.com
atinelli@masetinelli.com
*Attorneys for Defendant Eduardo Jose*
        *Callejas Callejas*

Via U.S. Mail:
Horacio Sequeira
13280 Port Said Road C301
Opa-locka, Florida 33054
soyhoracios@hotmail.com
centrolatinos@hotmail.com
*Pro se Plaintiff*