## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 16-25052-CIV-MARTINEZ/GOODMAN

HORACIO SEQUEIRA,

      Plaintiff,

v.

THE REPUBLIC OF NICARAGUA, et al.,

      Defendants.

_____/

### OMNIBUS REPORT AND RECOMMENDATIONS ON DEFENDANTS'
### MOTIONS TO DISMISS FIRST AMENDED COMPLAINT

*Pro se* Plaintiff Horacio Sequeira filed his first amended complaint against Defendants The Republic of Nicaragua ("Nicaragua"), City of Chinandega ("Chinandega"), Eduardo Jose Callejas Callejas ("Callejas"), and Estrellita del Carmen Troz Martinez ("Troz"). [ECF No. 79]. Plaintiff's prior complaint was dismissed without prejudice for lack of subject matter jurisdiction. [ECF Nos. 57; 69].

Callejas filed a motion to dismiss [ECF No. 84], Plaintiff filed a response [ECF Nos. 85; 86], and Callejas filed a reply [ECF No. 88]. Troz also filed a motion to dismiss , and Plaintiff filed a response. [ECF Nos. 87; 119]. Nicaragua and Chinandega (the "State Defendants") filed a joint motion to dismiss. [ECF No. 89]. Plaintiff responded in opposition [ECF No. 119], and the State Defendants filed a reply [ECF No. 124]. United

States District Judge Jose E. Martinez referred all pretrial matters to the Undersigned. [ECF No. 82].

For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **grant** Defendants' motions [ECF Nos. 84; 87; 89] and **dismiss** Plaintiff's first amended complaint **without prejudice**. The Undersigned recommends that Judge Martinez find that the State Defendants are sovereign defendants immune from suit, and because of this, the Court lacks federal question jurisdiction. The Undersigned also recommends that Judge Martinez find that the Court lacks subject matter jurisdiction over the remaining individual defendants, Callejas and Troz, based on lack of diversity jurisdiction.

## I.      BACKGROUND

### a.  Plaintiff's First Complaint

In his first complaint, Plaintiff alleged that he is the rightful owner of 1000 acres of farmland located in Chinandega, Nicaragua called "El Pital." [ECF No. 1, ¶¶ 10-11]. He also claimed that he owns the farm animals that live on El Pital. [ECF No. 1, ¶ 7]. Although the specifics were unclear due to Plaintiff's conclusory, inconsistent, and often incomplete allegations, it appeared that Plaintiff was alleging that Callejas, an American citizen and Florida resident, failed to make some unspecified payments and failed to relinquish control of El Pital. [ECF No. 1, ¶¶ 6, 25, 30, 118-121]. Plaintiff also alleged that Callejas sent an individual to "invade" El Pital and that Callejas is

responsible for violent attacks and death threats against Plaintiff. [ECF No. 1, ¶¶ 31, 87, 92, 132].

Plaintiff also claimed that Troz, an employee of Nicaragua's Office of Public Record, filed forged documents stating that Callejas was the rightful owner of El Pital, an action which allegedly interfered with Plaintiff's supposed contract with Callejas. [ECF No. 1, ¶¶ 8, 30, 48-53]. Plaintiff further claimed that Defendants disobeyed a Nicaraguan court order (which allegedly found that Plaintiff was the rightful owner of El Pital). [ECF No. 1, ¶ 47].

Plaintiff claimed that Callejas and Troz worked together in carrying out the threats and forgery so that the State Defendants could take Plaintiff's property from him. He further alleged that the State Defendants then sold the seized animal meat from the farm animals at El Pital in the United States. [ECF No. 1, ¶¶ 29, 41, 47, 51, 53, 60, 66-67]. Plaintiff alleged 14 state law counts against Defendants.[1] [ECF No. 1].

Defendants moved to dismiss Plaintiff's first complaint. [ECF Nos. 16; 25; 26]. The Undersigned recommended that Plaintiff's complaint be dismissed. [ECF No. 45].

---

[1]    Plaintiff alleged the following counts: (1) "unlawful expropriation (illegal taking) of personal and real property"; (2) conversion; (3) unjust enrichment; (4) torture; (5) "cruel, inhumane, or degrading treatment"; (6) assault and battery; (7) trespass to land; (8) trespass to chattels; (9) intentional interference with prospective economic advantage and business relationship; (10) negligent interference with prospective economic advantage and business relationship; (11) breach of express written and oral contract and implied-in-fact contract; (12) breach of the implied covenant of good faith and fair dealing; (13) intentional infliction of emotional distress; and (14) injunctive relief. [ECF No. 1].

First, the Undersigned determined that the State Defendants are sovereign defendants immune from suit under the Foreign Sovereign Immunities Act ("FSIA"), and thus the Court lacked federal question jurisdiction. [ECF No. 45, pp. 6-7]. Under the FSIA, foreign states and their agencies or instrumentalities are immune from suit in the United States *unless* an FSIA statutory exception applies. *See* 28 U.S.C. §§ 1603, 1604, 1605; *Mezerhane v. Republica Bolivariana de Venezuela*, 785 F.3d 545, 548 (11th Cir. 2015). Plaintiff asserted that the following exceptions to FSIA immunity applied: waiver, § 1605(a)(1); commercial activity, § 1605(a)(2); expropriation, § 1605(a)(3); and tort, § 1605(a)(5). [ECF No. 1, ¶¶ 2, 5-14].

With regard to waiver, the Undersigned found that Plaintiff did not allege facts supporting a theory that the State Defendants explicitly waived, in a contract or otherwise, their sovereign immunity. [ECF No. 45, pp. 12-14]. Plaintiff did not allege that he entered into any contract with Nicaragua and Chinandega, and even if he had, the Undersigned pointed out that "[t]he contract would need to contain an applicable arbitration provision or choice of law provision that proves that the contracting parties agreed to have lawsuits or arbitrations in the U.S. or that U.S. law would govern all disputes arising from the contract." *Id.* at p. 14.

In order to meet the commercial activity exception, Plaintiff was required to allege conduct by Nicaragua and Chinandega

> based upon a commercial activity carried on in the United States by the
> foreign state; or upon an act performed in the United States in connection

4

with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

§ 1605(a)(2); [ECF No. 45, p. 14].

Plaintiff did not satisfy this exception. [ECF No. 45, pp. 14-18]. The Undersigned found that the gravamen of Plaintiff's complaint was the alleged illegal taking of his property in Nicaragua, which is not a commercial activity and does not have a direct effect in the United States. *Id.* The Undersigned found that Plaintiff's claim that the State Defendants were selling meat in the United States derived from the livestock located at El Pital did not satisfy the commercial activity exception because it was not the gravamen of Plaintiff's complaint. *Id.*

The expropriation exception applies where it is alleged that:

rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

§ 1605(a)(3); [ECF No. 45, p. 18].

The Undersigned found that while Plaintiff made conclusory allegations that the State Defendants sold animal products in the United States, the alleged taking did not violate international law because Plaintiff's allegations stem from the conduct of individual actors, not the State Defendants. [ECF No. 45, pp. 23-26].

And finally, as to the tort exception to immunity under the FSIA, the Undersigned found that none of the State Defendants were alleged to have engaged in tortious conduct that occurred in the United States, as is required under the tort exception. § 1605(a)(5); [ECF No. 45, p. 26].

Because the exceptions to the FSIA did not apply, the Undersigned recommended that the complaint be dismissed against the State Defendants. [ECF No. 45, p. 26]. Further, the Undersigned found that because there was no longer subject matter jurisdiction arising under the FSIA for Plaintiff's claims, the only possibility for jurisdiction would be diversity jurisdiction. [ECF No. 45, p. 27]. Diversity jurisdiction was found not to exist because Plaintiff and Callejas were alleged to both be Florida residents. [ECF No. 45, p. 28].

Judge Martinez adopted the Undersigned's Report and Recommendations, and Plaintiff was given leave to amend his complaint. [ECF Nos. 57; 69; 78].

**b.  Plaintiff's First Amended Complaint**

Plaintiff filed his amended complaint and alleges 13 state law claims against Defendants.[2] [ECF No. 79]. Plaintiff argues that there is subject matter jurisdiction for

---

[2]      Plaintiff alleges the following counts: (1) unlawful expropriation or illegal taking of property against Nicaragua; (2) breach of contract against Nicaragua; (3) breach of implied covenant of good faith and fair dealing against Nicaragua; (4) breach of contract against Callejas; (5) breach of implied covenant of good faith and fair dealing against Callejas; (6) conversion against Nicaragua, Chinandega, and Callejas; (7) restitution against Nicaragua, Chinandega, and Callejas; (8) trespass to land against Nicaragua, Chinandega, and Callejas; (9) trespass to chattels against Nicaragua,

6

his claims against the State Defendants under the waiver and commercial activities exceptions to the FSIA. [ECF No. 79, pp. 10-18]. Again, Plaintiff's allegations are disjointed and unclear, but, in substance, he reasserts the same allegations as his first complaint, i.e.: (1) that El Pital and the livestock on the property were illegally taken from him and (2) that Callejas and Troz participated in "unlawful activities in order to assist Nicaragua and Chinandega in the illegal taking" of his property, including by the "use of death threats, forging registry documents, [and] disobeying court orders, among other things." [ECF No. 79, ¶¶ 17-18, 23, 25].

Plaintiff also makes some additional allegations that appear to be an attempt to address the shortcomings identified in the Undersigned's earlier report and recommendations. Plaintiff alleges that the State Defendants took over his business to engage in "commercial activities" in the U.S. and that these activities "are now carried out through Nicaragua's front men living in the U.S.A. and are under Nicaragua's direction and control." [ECF No. 79, ¶ 3].

Plaintiff states that Nicaragua has "transmuted" his real estate and personal properties by selling his cattle as meat product in the United States. [ECF No. 79, ¶¶ 20-

---

Chinandega, and Callejas; (10) intentional interference with prospected economic advantage and business relationship against Nicaragua, Chinandega, and Callejas; (11) negligent interference with prospected economic advantage and business relationship against Nicaragua, Chinandega, and Callejas; (12) intentional infliction of emotional distress against Nicaragua, Chinandega, and Callejas; and (13) negligent infliction of emotional distress against Nicaragua, Chinandega, and Callejas.

21]. He also alleges that some of the profits gained by the sale of his cattle as meat product have been used "to pay for the salary of their front men or straw men located in the U.S.A. to commit illegal activities such as money laund[ering]" and "Nicaragua and Chinandega have used some attorney[']s trust accounts located in the U.S.A. to commit such activities." [ECF No. 79, ¶ 26]. Plaintiff also states that some of these profits have been used to fund the State Defendants's counsel in this matter, Silverio & Hall. [ECF No. 79, ¶ 49].

Most notably, Plaintiff now alleges that in May 1998, he entered into a written contract with the Instituto de Desarrollo Rural ("IDR"), an alleged entity of Nicaragua, regarding the raising of cattle and the selling and exportation of meat into the United States. [ECF No. 79, ¶ 45]. In addition, Plaintiff alleges:

> [I]n December 2005 . . . Nicaragua and Mr. Sequeira modified in writing their agreement and included in it an International Arbitration Clause . . . . Under the terms of the contract, Nicaragua agreed to and clearly revealed its intention to waive its jurisdiction by agreeing to an international arbitration in the U.S.A. under the DR-CAFTA's rules or under the ICSID's rules or under any U.S.A. District Court rules.

[ECF No. 79, ¶ 45].

As to Callejas and Troz, Plaintiff further alleges that Callejas brings Plaintiff's cattle from El Pital to the Chinandega slaughterhouse, which is operated by the Chinandega Registry, where Troz is Chief Registrar. [ECF No. 79, ¶ 54]. Nicaragua then processes the meat and sells the beef in the United States. [ECF No. 79, ¶ 54].

Plaintiff also alleges that Callejas sends "monthly rental payments" from the U.S. to Chinandega; "[h]owever, he deducts from that payment part of his salary that Nicaragua pays him as a front man acting on Nicaragua's behalf and for its benefits in the U.S.A." [ECF No. 79, ¶ 68].

### c.  Request for Jurisdictional Discovery

After Defendants moved to dismiss Plaintiff's first amended complaint, Plaintiff moved for limited jurisdictional discovery to prove disputed facts relating to subject matter jurisdiction. [ECF No. 95]. Specifically, Plaintiff sought the following discovery: (1) to serve a subpoena on Defendants' attorneys, (2) to inspect Nicaragua's records in order to demonstrate the waiver exception since Nicaragua has represented that it has no record of any contract with Plaintiff, and (3) to serve requests for admissions to six unidentified individuals to demonstrate the commercial activity exception. [ECF No. 95, pp. 11-12]. The Undersigned denied the motion for jurisdictional discovery because Plaintiff failed to identify what specific facts would be verified through these requests and because, even if he had, his proposed requests were improper. [ECF No. 104, p. 4].

### d.  Jairo Sequeira's California Case

A factually analogous lawsuit was filed in the Central District of California by Jairo Sequeira, whom Defendants believe to be Plaintiff's brother. The lawsuit, which is against Nicaragua, Chinandega, another Nicaraguan city, and five Nicaraguan officials, involves a similar land dispute in Nicaragua and the alleged the sale of meat in the

United States from confiscated farm animals, and also alleges that the sovereign defendants collected rental income from individuals in the United States. *Jairo Sequeira v. Republic of Nicaragua, et al.*, U.S. District Court for the Central District of California, Case No. 13-CV-4332, ECF No. 195, p. 3.

Just like Horacio Sequeira alleges in this case, Jairo Sequeira argued that the waiver, commercial activity, expropriation, and tort exceptions applied to the sovereign's immunity under FSIA. *Id.* at p. 4. The California District Court disagreed and recently dismissed Jairo Sequeira's third amended complaint against the sovereign defendants.[3] *Id.* As to the waiver exception, Jairo provided the Court with a written contract that provided that Chinandega agreed to submit to the jurisdiction chosen by Jairo Sequeira. *Id.* at 5. The agreement was notarized by the Plaintiff in this action, Horatio Sequeira. *Id.* The defendants there contended that the agreement was fraudulent and filed affidavits stating that no such agreement existed. *Id.* The Court

---

[3]     The California District Court had previously dismissed the Plaintiff's complaint as facially deficient. The Ninth Circuit Court of Appeals reversed the dismissal, finding that Jairo "was not required to produce such evidence in response to a ***facial attack*** on subject matter jurisdiction." *Jairo Sequeira v. Republic of Nicaragua, et al.*, U.S. District Court for the Central District of California, Case No. 13-CV-4332, ECF No. 112, p. 2 (emphasis added). As discussed further below, a ***factual attack*** on subject matter jurisdiction is different from a ***facial attack*** and requires a court to consider matters outside the pleadings because no presumption of truthfulness attaches to the plaintiff's allegations. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal citations omitted). Jairo later amended his complaint, and defendants raised a factual challenge to subject matter jurisdiction. *Id.* at ECF No. 195.

found the agreement was invalid under Nicaraguan law, and thus the waiver exception to FSIA immunity did not apply. *Id.* at 7.

As to the commercial activity exception, the Court found that Jairo Sequeira presented no evidence that the defendants sold his cattle as meat products in the United States or that the defendants received rental profits from individuals in the United States. *Id.* at 9, 13. Thus, Jairo Sequeira failed to satisfy the commercial activity exception. *Id.* at 13. Finally, as to the expropriation and tort exceptions, the California federal district court concluded that Jairo Sequeira failed to present any evidence supporting his allegation that the defendants' tortious conduct occurred in the United States. *Id.* at 13-14.

Defendants in the instant case point out that many of the allegations added to Plaintiff's amended complaint here were taken verbatim from Jairo Sequeira's third amended complaint, including that Jairo Sequeira's contract with the IDR was amended in 2005 to add an arbitration provision and that illegal profits are being used by Defendants to pay their "front men" in the United States. [ECF No. 89, p. 7].

## II.     LEGAL STANDARD

Under the FSIA, foreign states are immune from suit unless an FSIA statutory exception applies. *See* 28 U.S.C. §§ 1603, 1604, 1605; *Mezerhane v. Republica Bolivariana de Venezuela*, 785 F.3d 545, 548 (11th Cir. 2015). "If sovereign immunity exists, then the court lacks both personal and subject matter jurisdiction to hear the case and must enter

an order of dismissal." *de Sanchez v. Banco Cent. De Nicaragua*, 770 F.2d 1385, 1389 (5th Cir. 1985) (internal citations omitted). However, "[i]f an exception does apply, the district court has jurisdiction." *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312-13 (11th Cir. 2009) (citing 28 U.S.C. § 1330(a));[4] *see also Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) (stating FSIA provides "sole basis for obtaining jurisdiction over a foreign state in [U.S.] courts").

To establish subject matter jurisdiction under the FSIA, a plaintiff must overcome the presumption that the foreign state is immune from suit by producing evidence that "the conduct which forms the basis of [the] complaint falls within one of the statutorily defined exceptions." *S & Davis Int'l, Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1300 (11th Cir. 2000) (internal citations omitted). Once a plaintiff demonstrates that one of the statutory exceptions to FSIA immunity applies, the burden then shifts to the defendant to prove by a preponderance of the evidence that the plaintiff's claims do not fall within that exception. *See Butler*, 579 F.3d at 1312-13; *S & Davis Int'l*, 218 F.3d at 1300.

Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), such as under the FSIA, come in two forms: (1) "facial attacks" on the complaint, which require the court to draw all reasonable inferences in favor of the

---

[4]     Section 1330(a) provides that "district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement." § 1330(a).

plaintiff to see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction; and (2) "factual attacks," which "challenge the existence of subject matter jurisdiction in fact" and require the court to consider matters outside the pleadings because no presumption of truthfulness attaches to plaintiff's allegations. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal citations omitted).

Here, Defendants factually attack the FSIA exceptions that Plaintiff alleges in his complaint. Plaintiff responded to the factual attacks with evidence, i.e., affidavits and a purported contract, filed in an attempt to prove that the FSIA exceptions apply. Accordingly, the Undersigned will not automatically regard Plaintiff's allegations as true. Instead, the Undersigned will "regard the pleadings as mere *evidence* on the issue" of subject matter jurisdiction. *Trigeant Ltd. v. Petroleos de Venezuela S.A.*, No. 08-80584-CIV, 2010 WL 11505968, at *10 (S.D. Fla. Jan. 5, 2010) (internal citation omitted) (emphasis added).

## III.   ANALYSIS

The Undersigned finds that Plaintiff has not overcome the presumption that the State Defendants are immune from suit because he has not produced evidence supporting that "the conduct which forms the basis of [the] complaint falls within one of the statutorily defined exceptions." *Republic of Yemen*, 218 F.3d at 1300.

Specifically, the contract submitted by Plaintiff, purported to be between Plaintiff and the IDR, appears to be a sham contract created by Plaintiff for the purpose of

defeating dismissal of his complaint. Notwithstanding the sham status of the contract, the signatory of the purported contract would not have authority to waive immunity for the State Defendants.

And as to the commercial activity exception, the State Defendants have presented compelling evidence negating Plaintiff's claim that the commercial activity exception applies. But even assuming that Plaintiff's allegations were not negated by the State Defendants' evidence, Plaintiff's allegations are still insufficient to satisfy the commercial activity exception.

Because there is no subject matter jurisdiction under the FSIA for Plaintiff's claims against the State Defendants and because Plaintiff does not have diversity jurisdiction with Troz and Callejas, the claims against Troz and Callejas are subject to dismissal as well.

### a.   Subject Matter Jurisdiction for the State Defendants Under the FSIA

#### i.   Waiver Exception

The Undersigned first considers whether Plaintiff has presented evidence supporting the waiver exception to the FSIA. This exception applies if "the foreign state has waived its immunity either explicitly or by implication." § 1605(a)(1). For purposes of the FSIA, a foreign state expressly waives its right to immunity only where its intent to do so is clear and unambiguous. *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1338 (11th Cir. 2015) (internal citations omitted). Implicit waiver

14

applies if "the foreign state reveals its intent to waive its immunity by: (1) agreeing to arbitration in another country, (2) agreeing that the law of a particular country should govern a contract, or (3) filing a responsive pleading in an action without raising the defense of sovereign immunity." *Id.* (internal quotations omitted).

Upon review of Plaintiff's first complaint and the parties' submissions, the Undersigned determined that the waiver exception did not apply because there was no alleged agreement between Plaintiff and Nicaragua and/or Chinandega, much less an agreement including a provision that all disputes would be resolved in the United States. [ECF No. 45, pp. 12-14].

Plaintiff then amended his complaint and added an allegation stating that he did in fact enter into a contract with IDR, alleged to be an entity of Nicaragua, regarding raising cattle and selling meat in the United States and that the contract "clearly revealed [IDS's] intention to waive its jurisdiction by agreeing to an international arbitration in the U.S.A. under the DR-CAFTA's rules or under the ICSID's rules or under any U.S.A. District Court rules." [ECF No. 79, ¶ 45]. Plaintiff did not attach a copy of this agreement to his amended complaint, however.

Nicaragua and Chinandega then filed their motion to dismiss and attached a declaration from Miguel Angel Baca Jimenez, Legal Advisor of the Ministry of Family, Community, Cooperative, and Associative Economy, which is the custodian of records of the IDR. [ECF No. 89-3, pp. 4-5]. Baca states, under penalty of perjury, that there is no

record of any contract between the IDR and Plaintiff and/or Callejas. [ECF No. 89-3, p.

5]. He also states that there

> is no record of any model contract of the Institute for Rural Development
> that includes an arbitration clause selecting the International Centre for
> Settlement of Investment Disputes [ICSID] as an arbitral forum for the
> resolution of disputes, a forum selection clause selecting the United States
> as a forum for the resolution of disputes, or a waiver of immunity in a
> foreign forum.

[ECF No. 89-3, p. 5 (emphasis added)].

Additionally, the State Defendants submitted a declaration in support of their

motion to dismiss from Maria Xiomara Mena Rosales, the Executive Director of the

Center for the Processing of Exports of the Republic of Nicaragua, which keeps the

records of all legal and natural persons authorized to export goods, including meat and

meat products, from Nicaragua. [ECF No. 89-5, p. 4]. Mena states, under penalty of

perjury, that she conducted a search of all records from January 1, 2002 to August 31,

2018, and there were no records of any export found in the name of Plaintiff and that

Plaintiff is not an authorized exporter. [ECF No. 89-5, p. 5]. Chinandega, IDR, Callejas,

and Nicaragua also do not appear as authorized exporters. *Id.* Further, Mena states that

only registered industrial slaughterhouses may export beef, and there are no

slaughterhouses authorized to export beef in the Department of Chinandega. *Id.*

Subsequently, before filing his response in opposition to the State Defendants'

motion to dismiss, Plaintiff sought jurisdictional discovery and argued that he needed

to inspect Nicaragua's records in light of its representation that no such contract existed

between IDR and Plaintiff. [ECF No. 95, p. 11]. However, after the Undersigned denied Plaintiff's request for jurisdictional discovery, Plaintiff filed his response in opposition to the State Defendants' motion to dismiss and attached what he now says is a copy of a contract providing that Nicaragua waived immunity from suit in the United States. [ECF No. 119-1, pp. 30-40].

Plaintiff claims that the contract is an amendment to a prior contract entered into on May 9, 1998. [ECF No. 119-1, p. 10]. The purported contract is in Spanish, but the State Defendants provided a certified translation of the purported contract. [ECF No. 119-1, pp. 30-40; 124-1, pp. 11-16].

Because the State Defendants have **factually** attacked the existence of a waiver agreement under the FSIA, Plaintiff's allegations in his amended complaint are not presumed to be true, and the Undersigned must consider the evidence presented by the parties and make factual findings. *See Trigeant*, 2010 WL 11505968, at *10; *see also Comparelli v. Republica Bolivariana De Venezuela*, 891 F.3d 1311, 1319 (11th Cir. 2018) (stating that "district court must **resolve relevant factual disputes"** when presented with factual challenge to jurisdiction under the FSIA) (emphasis added).

Therefore, the Undersigned must make factual findings about whether the State Defendants entered into a contract with Plaintiff waiving immunity under the FSIA. *See Phoenix Consulting Inc. Republic of Angola*, 216 F.3d 36, 41 (D.C. Cir. 2000) (remanding to district court to resolve factual dispute where sovereign defendant presented evidence

in support of its motion to dismiss that written contract purporting to contain waiver agreement was forged and that sovereign defendant never agreed to waive immunity).

The Undersigned has considered Plaintiff's first amended complaint, along with the parties' submissions, in order to issue factual findings. As explained below, the Undersigned finds that the agreement is not authentic and that the signatory of the purported contract would not have authority to waive immunity for the State Defendants anyway.

First, the Undersigned finds the timing of Plaintiff's submission of the purported contract to be *highly* suspect. Plaintiff made no mention of this agreement in his first complaint. After it was pointed out that there could be no waiver by the State Defendants if there was no agreement, Plaintiff added an allegation that there was an agreement to arbitrate. When the State Defendants produced an affidavit stating that there was no such contract, Plaintiff requested jurisdictional discovery to confirm this. When his request for discovery was denied, a copy of the contract magically appeared.

Second, a cursory review of the language in the agreement raises even more suspicion that the purported contract is a sham. The title of the contract is "Amendment of the Contract for the Breeding and Development of Heavy Livestock and the Sale of Livestock and Products Thereof within the United States and Insertion of an Arbitration Clause." [ECF No. 124-1, p. 11]. Other than the reference in the title to an "amendment," there is no mention of an original contract anywhere in the contract, and the text of the

agreement does not specify which sections or terms of the original agreement are being amended. [ECF No. 124-1, pp. 11-16].

Further, while there are vague references to the number of cows on the El Pital property, there are no clear terms in the contract regarding what the parties' alleged agreement was and what consideration was provided by each party. Rather, it appears that specific details believed to satisfy exceptions under the FSIA or to prevent dismissal were haphazardly compiled to form a contract.

For example, there are a number of references to producing livestock that would be sold "exclusively" in Miami, Florida and that the export of the meat would be to Miami, Florida only. [ECF No. 124-1, pp. 13-14]. It seems highly unlikely that parties to an agreement regarding cattle-raising in Nicaragua would limit the export of the cattle meat to only one city: Miami.

The "arbitration" clause is also illogical. It provides:

> Both parties agree to submit any legal dispute resulting from the performance of this contract to an Arbitration process . . . and in the event of a disagreement with the Award given by said arbitrators . . . both parties may file their claims in Federal Court in Miami Florida or in an Arbitration Court of the Central America – United States of America – Dominican Republic Free Trade Agreement (CAFTA-DR) in the United States of America. Both parties agree that everything related to this contract is subject to the rules of the . . . CAFTA-DR or to the laws of the United States of America.

[ECF No. 124-1, pp. 14-15]. It is unclear why the parties would explicitly subject themselves to arbitration under CAFTA *or* a "Federal Court in Miami Florida" when

the contract was allegedly entered into in Nicaragua relating to land and cattle in Nicaragua. It is also odd that the parties would not specify what law of the United States would apply, i.e., Florida law or New York law, and that there is no provision addressing what happens if the parties cannot agree on whether they should arbitrate or go to a "Federal Court in Miami Florida."

There is also a provision in the so-called contract stating that any subsequent agreements do not need to be notarized. [ECF No. 124-1, p. 15]. This appears to be in response to the California federal court's finding in Jairo Sequeira's case that the contract submitted was void under Nicaraguan law because it was notarized by Jairo's brother, the Plaintiff here. *Jairo Sequeira v. Republic of Nicaragua, et al.*, U.S. District Court for the Central District of California, Case No. 13-CV-4332, ECF No. 195, pp. 6-7. The Undersigned also finds it suspicious that Plaintiff was the notary for the contract submitted by his brother, which was found to be void.

Based on the timing of the submission of the contract and its terms, the Undersigned finds that the contract purported to be between Plaintiff and the IDR is likely a sham contract created by Plaintiff for the improper purpose of preventing the dismissal of his case. However, even if Plaintiff were able to demonstrate that the waiver exception applied through the submission of the suspect contract, the State Defendants have proven by a preponderance of the evidence that the waiver exception does not apply. *See Butler,* 579 F.3d at 1312-13; *S & Davis Int'l,* 218 F.3d at 1300.

The Undersigned finds compelling the declarations submitted under penalty of perjury by Baca and Mesa, stating that no such contract exists; that the IDR has no similar model contract including any such arbitration provision; and that Plaintiff, Chinandega, and Nicaragua are not registered exporters of beef to the United States. Plaintiff has submitted no evidence to contradict these declarations other than the contract, which appears to be a sham contract created for the purposes of defeating dismissal.

Further, as pointed out by the State Defendants, even if the contract were authentic, the signatory for the IDR, Mr. Guerra, who allegedly entered into the contract as "Executive Director" of the livestock restocking program, would not have authority to waive sovereign immunity on behalf of the IDR or Nicaragua. [ECF No. 124, pp. 5-6]. The State Defendants submitted a declaration from a Nicaraguan constitutional law expert and lawyer, Dr. Navarro, who stated that the "IDR was not authorized to bind any person, any other decentralized institution, Chinandega or any other municipality, or the Republic of Nicaragua to any obligations to any third party, since it only had functional autonomy." [ECF No. 89-10, p. 24]. Navarro further states:

> No provision of Law 290 authorizes the IDR to waive sovereign immunity of the IDR, Chinandega or any other municipality, or Nicaragua or to submit any of those entities to the jurisdiction of a foreign court or arbitral institution. If the IDR were to attempt to do so, it would be in violation of the principle of legality of Article 130 of the Constitution, Law 290 and its regulation, Decree No. 71-98.

[ECF No. 89-10, p. 24].

21

Further, the provision in the contract stating that it was "published in the official gazette with the consent and ratification of the President of the Republic of Nicaragua and the approval of the National Assembly" is outlandish considering it relates to a cattle-raising agreement for 200 heads of livestock. [*See* ECF No. 124-1, pp. 11-12]. And Navarro's declaration provides that he was not aware of any legislative or executive act waiving Nicaragua's or Chinandega's sovereign immunity with respect to Plaintiff's claims here. [ECF No. 89-10, p. 25]. Plaintiff has provided no evidence to dispute this, such as the alleged publication in the gazette. Surely, if the President and the legislative branch of Nicaragua approved Plaintiff's cattle-raising contract, then there would be record of it somewhere.

Thus, even if Plaintiff did enter into the purported contract with Guerra, Guerra would not have authority to bind Nicaragua and Chinandega and there could be no waiver of immunity. *See Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1093 (9th Cir. 2018) (finding there was no waiver of immunity where signatory to agreement lacked actual authority to enter into the contract).

Accordingly, the Undersigned finds that the waiver exception to immunity under the FSIA is not satisfied here.

### ii. *Commercial Activity Exception*

Plaintiff also argues there is jurisdiction for his claims against the State Defendants under the commercial activity exception to the FSIA. [ECF No. 79, pp. 11-18]. The commercial activity exception applies if

> [1] the action is based upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

§ 1605(a)(2).

Just like in Plaintiff's original complaint, Plaintiff alleges in his first amended complaint that his property, El Pital, and the livestock on it were illegally taken from him through actions by Callejas, Troz, and the State Defendants. Plaintiff includes some additional details, likely in an attempt to satisfy the commercial activity exception. Plaintiff claims that Callejas brings Plaintiff's cattle from El Pital to the Chinandega slaughterhouse, which is operated by the Chinandega Registry, where Troz is Chief Registrar. [ECF No. 79, ¶ 54]. Nicaragua then processes the meat and sells the beef in the United States. [ECF No. 79, ¶ 54].

Plaintiff claims that some of the profits gained by selling his cattle as meat product have been used "to pay for the salary of their front men or straw men located in the U.S.A. to commit illegal activities such as money laund[ering]" and "Nicaragua and

Chinandega have used some attorney[']s trust accounts located in the U.S.A. to commit such activities." [ECF No. 79, ¶ 26].

Additionally, Plaintiff claims that Callejas sends "monthly rental payments" from the United States to Chinandega; "[h]owever, he deducts from that payment part of his salary that Nicaragua pays him as a front man acting on Nicaragua's behalf and for its benefits in the U.S.A." [ECF No. 79, ¶ 68].

As discussed above, the State Defendants have submitted declarations from Baca (custodian of records for the IDR) and Mena (Executive Director of the Center for the Processing of Exports of the Republic of Nicaragua) providing that Nicaragua and Chinandega are not registered exporters of beef to the United States and that there are no slaughterhouses authorized to export beef in the Department of Chinandega. [ECF Nos. 89-3, p. 5; 89-5, pp. 4-5].

Additionally, the State Defendants provided a declaration from Aura Lyla Padilla Alvarez, the Mayor of the Municipality of Chinandega. [ECF No. 90-2, p. 5]. Padilla states under penalty of perjury that Chinandega is distinct from El Viejo, where El Pital is located, and that Chinandega does not occupy, own, operate, or manage any properties, including El Pital, in El Viejo; nor does it receive rental payments for El Pital. [ECF No. 90-2, p. 7]. Further, Padilla states that she has reviewed municipal records, and Chinandega does not engage in the sale of meat to the United States or own or operate a slaughterhouse. [ECF No. 90-2, p. 8].

Because the State Defendants have factually attacked Plaintiff's allegations, the allegations in Plaintiff's first amended complaint are not presumed to be true, and the Undersigned must consider the evidence presented by the parties and make factual findings. *See Comparelli*, 891 F.3d at 1319 (stating that "district court must resolve relevant factual disputes" when presented with factual challenge to jurisdiction under the FSIA).

The Undersigned has considered Plaintiff's first amended complaint, along with the parties' submissions, and finds that Plaintiff has not demonstrated that the commercial activity exception applies, and even if it did, the State Defendants have proven by a preponderance of the evidence that the claims do not fall within that exception. *See Butler*, 579 F.3d at 1312-13.

A cursory review of Plaintiff's allegations calls into question their veracity as they are outlandish and appear to be based purely on speculation, such as Plaintiff's allegation that the State Defendants use money from the sale of meat products for "money laundering" and attorney's fees in the United States. Putting this aside, Defendants have produced compelling evidence to refute Plaintiff's allegations.

The Undersigned finds compelling the declarations from Baca and Mena, which provide that Nicaragua and Chinandega are not authorized to export beef to the United States and that Chinandega does not have a slaughterhouse. [ECF Nos. 89-3, p. 5; 89-5, pp. 4-5]. This is further corroborated by Padilla, the Mayor of Chinandega, who declares

under penalty of perjury that Chinandega does not have a slaughterhouse and does not sell beef in the United States. [ECF No. 90-2, pp. 7-8]. The Undersigned also finds compelling Padilla's declaration that Chinandega has no connection to El Pital, which is located in another municipality, and that Chinandega does not receive rental proceeds from Callejas for the use of El Pital. [ECF No. 90-2, p. 7].

Plaintiff has not submitted any evidence that negates these declarations, other than the sham contract purporting to be a cattle-raising agreement between the IDR and Plaintiff.

But even assuming that Plaintiff's allegations were not negated by the State Defendants' evidence, Plaintiff's allegations are nevertheless still insufficient to satisfy the commercial activity exception.

As explained in the Undersigned's earlier-issued report and recommendations recommending dismissal of Plaintiff's first complaint, the illegal taking of Plaintiff's land and cattle in Nicaragua does not satisfy the commercial activity exception. [ECF No. 45, pp. 15-17]. The illegal taking of Plaintiff's land and cattle is not a commercial activity, and further, it was not carried out in the United States, as is required under the first two prongs of the commercial activity exception. *See Beg v. Islamic Republic of Pakistan*, 353 F.3d 1323, 1325 (11th Cir. 2003) (finding that "illegal taking" or expropriation does not constitute commercial activity because it is an extension of government power that is considered public in nature).

Additionally, Plaintiff's allegation that the State Defendants are selling meat in the United States that is derived from his illegally taken cattle does not satisfy the commercial activity exception because it is not the gravamen of Plaintiff's complaint. [ECF No. 45, p. 17]; *see OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 395 (2015) (stating that the alleged commercial activity must be equivalent to the gravamen of the complaint and that rather than individually analyzing each claim, the court must zero in on the core of the suit to determine whether exception applies). Plaintiff's explanation of what the State Defendants allegedly do with the profits they receive from the meat sales, i.e., for money laundering or attorney's fees, does not change the fact that the gravamen of the complaint is the taking of Plaintiff's land and cattle.

Further, Plaintiff's allegations still do not satisfy the third prong under the commercial activity exception: "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a ***direct effect*** in the United States." § 1605(a)(2) (emphasis added). A direct effect for purposes of this prong is "an immediate consequence of the defendant's activity." *Guevara v. Republic of Peru*, 608 F.3d 1297, 1309 (11th Cir. 2010).

While the taking of Plaintiff's cattle may have had a direct effect on Plaintiff, who lives in the United States, this loss by Plaintiff does not satisfy the third prong. *Araya-Solorzano v. Gov't of Republic of Nicaragua*, 562 F. App'x 901, 904 (11th Cir. 2014) (internal citations omitted) ("Mere financial loss by a person—individual or corporate—in the

U.S. is not, in itself, sufficient to constitute a 'direct effect.'"). Again, the alleged sale of meat in the United States is an indirect effect of the taking of Plaintiff's cattle, as are the profits from the sale of this meat, such as those alleged to be used for money laundering and attorney's fees.

To the extent Plaintiff argues that the alleged breach of the cattle raising contract constitutes commercial activity under the FSIA, as discussed above, the cattle raising contract submitted by Plaintiff appears to be a sham document created for the purposes of defeating dismissal here and has been refuted by the State Defendants. Regardless, again, even if Plaintiff's allegation is that Nicaragua is not sharing profits from beef sales in the United States as required by the contract, Plaintiff's core complaint remains that his property and the cattle (he was supposed to be sharing under the cattle raising agreement) was illegally taken from him.

Accordingly, Plaintiff has not demonstrated that the commercial activity exclusion applies here.[5]

---

[5]     Unlike Plaintiff's original complaint, Plaintiff does not appear to argue that the expropriation and tort exceptions to the FSIA apply here. Thus, the Undersigned will not consider these exceptions in detail. However, the Undersigned notes that Plaintiff has not alleged any new facts or presented any new evidence that would satisfy these exceptions, which were previously found by the Undersigned not to apply. [*See* ECF No. 45, pp. 18-26]. As to expropriation, Plaintiff has attempted unsuccessfully to tie the State Defendants into what appears to be a contract dispute with Callejas. Plaintiff's purported cattle raising contract appears to be a sham, and the Defendants have provided evidence refuting that the State Defendants exported cattle to the United States. And further, Plaintiff still does not allege any tort that occurred in the United States.

Thus, because there is no subject matter jurisdiction under the FSIA against the State Defendants, the Undersigned recommends that Judge Martinez dismiss the claims against the State Defendants.

### b. Subject Matter Jurisdiction for Individuals Callejas and Troz

Because there is no subject matter jurisdiction under the FSIA for Plaintiff's claims against the State Defendants, there is no remaining basis for federal question jurisdiction for Plaintiff's claims against Callejas and Troz given that the claims all arise under state law.[6] Thus, for the Court to have jurisdiction over the individual defendants, diversity jurisdiction must be present. Diversity jurisdiction requires complete diversity, meaning that every plaintiff must be diverse from every defendant. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

Plaintiff alleges that he is a resident of Florida and that Callejas is a resident of Florida. [ECF No. 79, ¶¶ 31, 40]. Thus, because Plaintiff and Callejas are both Florida residents, complete diversity does not exist, and the Undersigned therefore also recommends that Judge Martinez dismiss the claims against Callejas and Troz.[7]

---

[6] In fact, the Undersigned notes that Plaintiff does not actually bring any counts against Troz in his first amended complaint.

[7] Because there is no jurisdiction over Callejas, the Undersigned will not address Callejas's argument that Callejas's alleged breach of contract in 2008 would be statutorily time barred. [ECF No. 84, pp. 1-2].

29

## IV.    CONCLUSION

Accordingly, because there is no subject matter jurisdiction over the State Defendants and no diversity jurisdiction over the individual defendants, the Undersigned **respectfully recommends** that the District Court **grant** Defendants' dismissal motions and dismiss Plaintiff's first amended complaint for lack of subject matter jurisdiction without prejudice. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice.").

## V.    OBJECTIONS

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Jose E. Martinez. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1);

*Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th

Cir. R. 3-1 (2016).

   **RESPECTFULLY RECOMMENDED**, in Chambers, Miami, Florida, on February

14, 2019.

Jonathan Goodman<br>UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez

All counsel of record

Horacio Sequeira
13280 Port Said Road
C301
Opa-Locka, FL 33054